IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| George Carter, #178695, ) | |
| ) | Civil Action No. 6:04-22844-HFF-WMC |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Joel Anderson, Warden; and Henry ) | |
| McMaster, Attorney of the State ) | |
| of South Carolina, ) | |
| ) | |
| Respondents. ) | |
| ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

**BACKGROUND**

The petitioner is currently incarcerated at the Wateree Correctional Institution of the South Carolina Department of Corrections (SCDC) pursuant to an order of the Clerk of Court for Orangeburg County. He was convicted in 1991 of distribution of crack cocaine and was sentenced to fifteen years confinement. He did not appeal or seek post-conviction relief.

On April 4, 2003, the petitioner received correspondence apparently in response to his questions regarding his projected release date:

> From July 18, 1991, until January 12, 1994, you received credit for goodtime, school and working. From January 12, 1994, until February 25, 1998, you received a day-for-day credit only. From February 25, 1998, until February 12, 2003, you do not receive credit. This timeframe is considered deadtime. Beginning February 12, 2003, you started receiving goodtime and when you start working, you will also receive job credits.
>
> Your current projected release date is May 9, 2006. When all the above factors are considered, you will have served approximately 9 years, 10 months, and 4 days of your 15-year sentence. This represents approximately only 65% of your total sentence.

(Pet. attach. C). Apparently pursuant to additional questions from the petitioner, he received further correspondence regarding the calculation of his projected release date:

> You are incorrect in your assessment of your sentence. Essentially your sentence is broken into 3 sections. This first is from July 18, 1991 until February 17, 1994, which is 2 years, 6 months and 29 days.
>
> The second is from February 17, 1994 until February 25, 1998 which is 4 years and 8 days. The next is December 17, 2002 until September 5, 2005, which is 2 years 8 months and 18 days. When all these times are added together, it equals 9 years, 3 months and 25 days. You must remember that the time spent on parole is counted as day-for-day.
>
> With your current projected release date you will have served approximately 62% of your sentence.

(Pet. attach. B).

On May 3, 2004, the petitioner filed a "request to staff member" alleging (verbatim):

> I, George Carter, 178695, grieve the fact that Mr. Brennan, Inst. Classification's Branch Chief, left my max-out date extended as when I accepted parole and having me do 62% and not 51%. According to the attached letters dated April 4th and 17th, 2003, I am serving 62 or 65%. I was sentenced to a 15 year sentence (NV). Once parole is revoked, my sentence goes back to the original sentence or time remaining. Generally, out of a 15 yr. sentence, I should serve not more than 7 years, 3 months. Considering the 6 years, 7 months, and 7 days in the April 17[th],

2

> 2003, letter and the start time of service on February 12th, 2003, until this up-coming May 12th, 2004 (1 year, 3 months), I should then satisfy my original sentence with 7 years, 10 months.
>
> Thus, provide me with my max-out date before accepting as of January 12th, 1994. Correct my max-out date and release me.

(Pet. attach. D). On May 14, 2004, the petitioner received a response explaining:

> Mr. Carter, this issue has already been addressed. Your sentence doesn't change upon revocation. However, the maxout date never returns to what it was. In your case, you were on dead time for almost 5 years; incarcerated time would almost double that! You don't earn goodtime or work credits while on parole. When they can't find you, you're no longer serving your sentence.

(Pet. attach. D). The petitioner did not attach the second page of the response with his petition; thus, the court has not been provided with the complete response to his grievance.

On August 30, 2004, the petitioner submitted a "request to staff member" seeking to confirm that the respondents' records reflected 143 days of jail time credit. The response dated September 2, 2004, confirmed that respondents' records reflected the same credit. On September 8, 2004, the petitioner filed a "request to staff member" seeking clarification regarding his projected "maxout" date. The response dated September 16, 2004, confirmed that his projected release date was September 5, 2005.

On November 17, 2004, the petitioner filed this petition, pursuant to 28 U.S.C. §2241, alleging (verbatim):

> Petitioner Carter, on October 12th, 2004, has undisputedly served approximately (8) eight years, (8) eight months, and (4) four days on a non-violent (15) fifteen year sentence for distribution of crack-cocaine, (1st) first offense, imposed in the year of 1991; he contends that he should serve only (51%) fifty-one percent or not more than (7) seven years, (7) seven months. Respondents contend that Petitioner should serve (62%) sixty-two percent.
>
> . . .
>
> Petitioner Carter is allegedly serving the extended parole sentence; or he is not given work-credits; or he is not given good-time credits; or he is required to serve (62%) sixty-two

> percent of his sentence; or his sentence has been miscalculated in violation of the 14th Amend. of the U.S. Constitution and/or the 5th Amendment's "double jeopardy clause."

(Pet. 1, 4). The petitioner seeks an order releasing him from the respondents' custody and finding that he has completed his sentence. In his petition, he also represents that he has not received a response to his "step two" grievance (Pet. 5).

On February 15, 2005, the respondents filed a motion to dismiss or, in the alternative, for summary judgment. By order of this court filed February 18, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed a response on March 9, 2005.

Pursuant to an order of this court, on July 14, 2005, the respondents filed an amended motion to dismiss or, in the alternative, for summary judgment. The petitioner filed a response opposing this motion on August 8, 2005.

## **APPLICABLE LAW**

The respondents have moved for dismissal of the petition pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56(c). Under Rule 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted).

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" is proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## **ANALYSIS**

### *Exhaustion of Remedies*

The petitioner challenges the State's calculation of his release date pursuant to 28 U.S.C. §2241. However, a petitioner must exhaust his administrative remedies before bringing a §2241 action. *See Brown v. Smith*, 828 F.2d 1493, 1495 (10th Cir. 1987).

The respondents argue that this case should be dismissed because the petitioner has not exhausted his state remedies. When the petitioner filed his petition, he represented that his step two grievance was still pending in state court. The respondents have presented evidence that the petitioner's step two grievance was subsequently denied on January 26, 2005. The petitioner did not appeal this decision or otherwise seek relief in the Administrative Law Judge Division or the state courts.

The petitioner here has clearly failed to demonstrate that he has exhausted his administrative remedies. There has been no final adjudication in state court as to whether his release date has been miscalculated. Thus, because his state court remedies have not been exhausted, this action is premature. Because the petitioner is *pro se*, the court will address the merits of his petition out of an abundance of caution.

### *Release Date Calculation*

The petitioner was convicted in 1991 of distribution of crack cocaine and was sentenced to fifteen years confinement. Because he was awarded 143 days of jail time, the petitioner's sentence "start date" was February 22, 1991. From July 18, 1991, until January 12, 1994, the petitioner received good time, education and work credits.

On January 12, 1994, he was paroled. On February 25, 1998, a warrant was issued for the plaintiff because he violated parole. He was arrested on December 17, 2002, and was returned to SCDC on February 12, 2003 to serve the remainder of his sentence. During the time he was on parole, the plaintiff received "day for day" credit – but not work credits, good time credits or education credits. *See* S.C. Code Ann. §§ 24-13-210, -230 (allowing the SCDC to deduct time from a prisoner's sentence for good conduct, work and education). The time between February 25, 1998, until February 12, 2003, is considered "dead time" in which the petitioner received no credits. On February 12, 2003, the petitioner began receiving credits again. Based on repeated calculations by SCDC officials, his projected release date is September 5, 2005. This is merely a projection and can change upon termination of institutional job assignments as well as in response to disciplinary convictions.

The petitioner contends that, once his parole was revoked, his release date should be the same date projected prior to parole. This is incorrect. Between the time he violated parole and the time he was arrested, the petitioner was not in SCDC custody and, thus, was not serving his sentence. The petitioner has failed to establish that his release date has been miscalculated.

## **CONCLUSION AND RECOMMENDATION**

Accordingly, for the foregoing reasons, it is recommended that the respondents' motion for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

August 10, 2005

Greenville, South Carolina

7